UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERIDREAM, INCORPORATED,<br>200 Professional Drive,<br>Suite 400<br>Gaithersburg, MD 20879<br><br>    Plaintiff,<br><br>v.<br><br>HON. ALPHONSO JACKSON<br>SECRETARY OF THE UNITED<br>STATES DEPARTMENT OF<br>HOUSING AND URBAN<br>DEVELOPMENT,<br>451 7th Street, S.W.<br>Washington, D.C. 20410<br><br>    Defendant. | Case: 1:07-cv-01752<br>Assigned To : Friedman, Paul L.<br>Assign. Date : 10/1/2007<br>Description: Admn. Agency Review |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Summary Of Complaint

1. This action challenges a final regulation adopted by the United States Department of Housing and Urban Development that eliminates down payment assistance (DPA) programs. For approximately 10 years, DPA programs have helped over one million individuals and families to buy their own homes, some 80 percent for the first time.

2. HUD adopted this regulation after 10 years of actively facilitating DPA programs, and more than six years after abandoning a rulemaking proceeding in which HUD had proposed a virtually identical rule. Then, as now, opposition to the proposed rule was overwhelming. HUD also adopted this regulation

in the face of strong opposition from Members of Congress and the imminent prospect of legislation that, if signed into law, will render the regulation moot.

3. The regulation adopted by HUD is arbitrary and capricious. It is contrary to the clear intent of Congress, HUD's own historic practices and interpretations, and governing judicial precedents. It is also not reasonably supported by HUD's explanations and justifications, and fails to offer a rational basis for rejecting alternative approaches.

4. Enforcement of this regulation will cause immediate and irreparable harm to plaintiff AmeriDream, Incorporated ("AmeriDream"), and is contrary to the public interest. The regulation will disrupt financing arrangements in connection with numerous home sales, and deprive many aspiring low- and moderate-income homebuyers who rely on DPA of the ability to purchase their own homes.

## Background

5. AmeriDream, a 501(c)(3) charity, provides a wide range of programs to benefit the families it serves, including homebuyer education, loss mitigation counseling, community development, and privately-funded down payment gift assistance. Through these various programs, AmeriDream not only helps families to purchase homes, but also provides education and other resources needed to help families meet the

responsibilities of homeownership. In turn, those responsible, committed homeowners help build safe, thriving communities.

6. AmeriDream raises money for down payment gifts from various sources. That money is deposited into a commingled account, which is episodically drawn upon to make down payment gifts to qualified home buyers taken from a waiting list. The money is sent directly to the closing attorney and placed in the home buyer's escrow account in advance of the loan closing. After the loan closes and the real estate transaction is complete, the seller of that property often pays the organization a service fee, typically within seven to ten days after closing. The service fee is deposited into the organization's fund for down payment assistance and is later used for new homebuyers requesting down payment assistance, other charitable programs, and administrative costs.

7. The AmeriDream process, still adhered to today, was developed with the full knowledge of HUD's Office of General Counsel. Significantly, in 1998, HUD's Office of General Counsel reviewed the DPA process and found that it was in compliance with HUD's guidelines. Further, in a letter dated October 25, 2005 from HUD to another government agency, Brian Montgomery, Assistant Secretary for Housing - Federal Housing Commissioner relied on the Office of General Counsel's determination to respond to agency recommendations.

8. The use of DPA is reported on the HUD-1, a standard form that itemizes all funds associated with the home purchase. In addition, HUD has issued several mortgagee letters clarifying the appropriate use of DPA which did not question the way DPA providers are funded. For instance, Mortgagee Letter 2004-02 addresses proper documentation when downpayment funds are provided from charities and Mortgagee Letter 2002-02 addresses credit policy issues regarding payment of borrower's obligations. In fact, HUD has not only made favorable statements about DPA programs in the past; HUD itself has utilized DPA programs when selling some of its own inventory of properties.

9. Since 1999, AmeriDream has provided over 200,000 gifts, totaling over $726 million. The average gift amount was $3,600 and went to individuals and families with a median income of $49,700; the median income of AmeriDream gift recipients has averaged 74 percent of the HUD national area median income (AMI) of that same period. According to HUD and the Internal Revenue Service, individuals and families with 74 percent of the AMI are considered low-income. Finally, since 1999, the average house price of an AmeriDream gift recipient is $108,000 compared to the HUD overall average of $116,000; the AmeriDream average is also lower than homes purchased with gifts from family, employers, or with no gifts. No government funds were used. In addition, since 1999, AmeriDream has educated over 60,000 homebuyers through its

homebuyer education course; counseled and assisted approximately 1,200 people to retain their home when confronted with mortgage difficulties; and built 168 affordable housing units in our inner cities, most notably in Southeast Washington, D.C.

10. AmeriDream serves low- and moderate-income individuals and families. Many of these individuals and families can meet all the requirements of an FHA-insured loan, such as employment history, income, and credit, yet cannot afford to set aside the minimum down payment of 3 percent of the contract sales price of the home. AmeriDream's DPA program is designed to work with FHA and its population of homebuyers to help them safely overcome the down payment barrier to homeownership while also giving homebuyers positive equity in their home from day one.

11. AmeriDream has established procedures and practices that utilize the licenses, business requirements, and regulations of its industry partners to ensure that AmeriDream gift recipients are qualified low- to moderate-income borrowers and that the homes are safe, sanitary and affordable. HUD's own regulations and historic practices affirmed AmeriDream's actions as reasonable and appropriate.

12. AmeriDream's programs and services since inception have been done with the explicit intention of enabling individuals and families to develop wealth through homeownership. With this focus, AmeriDream has relieved

poverty, lessened the burdens of government, and improved community beautification and maintenance. Their successful efforts help thousands of families break the cycle of poverty or develop financial independence, increase homeownership opportunities for thousands of underserved and traditional disenfranchised and discriminated populations, replace blight by developing new communities, and sustain strong communities by preventing foreclosures.

13. Moreover, while DPA programs began primarily as faith-based initiatives, AmeriDream relies on other sources of support, particularly within the real estate industry. That expanded support base—homebuilders and home sellers—has permitted down payment assistance to be extended to far more families who then are able to purchase homes at valuations validated by HUD-certified appraisers. This expanded support base has permitted DPA programs to grow without taxpayer dollars.

### Jurisdiction And Venue

14. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331. This action arises under the National Housing Act of 1934, as amended, 12 U.S.C. §§ 1701 et seq. ("NHA"), the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Fifth Amendment to the United States Constitution.

15. AmeriDream is a not-for-profit corporation organized under the laws of Maryland, with its principal place of business in Gaithersburg, Maryland.

16. AmeriDream is a 501(c)(3) charity dedicated to helping low- and moderate-income individuals and families become homeowners by providing crucial down payment assistance.

17. Defendant Alphonso Jackson is the Secretary ("Secretary") of HUD. He is responsible for the operation of HUD and the promulgation of rules and regulations by that agency, in particular the rule at issue herein. He is sued in his official capacity, only.

18. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (e).

19. On May 11, 2007, the Secretary published "Standards for Mortgagor's Investment in Mortgaged Property" in the Federal Register, a proposed regulation that would change the standards governing a homebuyer's investment in property when the mortgage on the property is insured by the Federal Housing Administration ("FHA"). 72 Fed. Reg. 27,048-27,051 (May 11, 2007) (to be codified at 24 C.F.R. pt. 203).

20. On October 1, 2007, the Secretary promulgated a final version of the regulation in the Federal Register. See Standards for Mortgagor's Investment in Mortgaged Property, 72


Fed. Reg. 50002-07 (Oct. 1, 2007)(to be codified at 24 C.F.R. pt. 203) ("the regulation").

21. The NHA requires homebuyers to make a down payment of 3 percent of the purchase price of their home to qualify for FHA mortgage guarantees. See 12 U.S.C. § 1709(b)(9). Many prospective low- and moderate-income homebuyers are unable to meet this requirement without the assistance of charitable organizations such as AmeriDream.

22. The regulation adversely and irreparably harms AmeriDream and the low- and moderate-income homebuyers who depend on its charitable assistance in numerous ways, including but not limited to the following:

(a) The regulation prohibits low- and moderate-income homebuyers from making their statutorily-required 3 percent down payment with funds provided by a charitable organization when home builders and home sellers are a source of funding and support.

(b) HUD's regulation will eviscerate AmeriDream's gift fund pool, crippling plaintiff's ability to provide down payment assistance to new homebuyers. In many cases, these individuals have no other source of funds with which to make the down payment required by the NHA. 12 U.S.C. § 1709(b)(9).

(c) The regulation will make it impossible for AmeriDream to achieve its mission, viz, "to expand affordable

housing opportunities for underserved groups and promote the value of homeownership as the foundation for building strong communities and individual prosperity."

(d) The regulation will have a significant impact on homeownership for low-income, first time, and minority homebuyers. Nearly 80 percent of FHA's purchase money mortgages in FY 2006 were to first time homebuyers. Nearly 32 percent of these homebuyers were minority and FHA estimates that at least 30 percent of their new business has seller funded DPA. By limiting the financing choices that these borrowers have, many will choose other options, such as subprime loans. Since delinquency and foreclosure rates for subprime loans do not compare favorably to those of FHA, these choices are not optimal. The market segment most impacted by this Rule is composed of those borrowers least likely to understand the risks associated with various loan options.

(e) The regulation will have significant impact on FHA and the mortgage lending industry. This regulation could reduce FHA's volume by 30 to 50 percent. Considering that its market share is lower than at any time in recent history—less than 2 percent—the impact to FHA could be quite serious. Repercussions of eliminating seller funded DPA would be felt by all of those focused on low- to moderate-income housing, including lenders, builders and other real estate professionals.

-9-

(f) FHA volume comprises approximately two-thirds of Ginnie Mae's securitization business. Ginnie Mae estimates that the regulation could reduce its volume by a conservative estimate of at least 17 percent, which represents a significant reduction in production—by around $18.3 billion to $22 billion annualized for 2007. Such a large and rapid decrease in Ginnie Mae's volume has the potential to create significant liquidity issues for Ginnie Mae securities.

### Legal Bases For Challenging HUD's Rule

23. The regulation contravenes the NHA's purpose of promoting housing affordability and choice; of facilitating access to, and competition and efficiency in the provision of, housing finance; of protecting the availability of adequate funding for housing at low cost; and of contributing to the general well-being of the housing sector in the national economy. The regulation is also contrary to HUD's own historic practices and interpretations, and governing judicial precedents.

24. The regulation exceeds the scope of the Secretary's authority to interpret, and promulgate regulations under, section 1709(b)(9) of the NHA. Because the regulation exceeds HUD's statutory jurisdiction, authority, and right, it is invalid pursuant to 5 U.S.C. § 706(2)(c).

25. The regulation is also not reasonably supported by HUD's explanations and justifications, and HUD has failed to offer any rational reasons for its rejection of alternative approaches to the regulation. The regulation is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. As such, the regulation is invalid pursuant to 5 U.S.C. § 706(2)(a).

26. Contrary to previous practices by HUD on this specific issue, HUD has failed to recognize the over 14,000 comments against the regulation versus less than 100 in support. In past attempts to issue such a rule, a margin of 1,800 comment against to 30 in support was sufficient for HUD to withdraw the rule. Furthermore, the Defendant stated publicly during the rule-making process that he was going to implement the Rule regardless of the public comments.

27. HUD has also failed to give adequate notice of the regulation it adopted and failed to articulate a rational basis for its decision to adopt this regulation, which is inconsistent with past positions taken and interpretations made by HUD. For these and other reasons, HUD's regulation is invalid pursuant to 5 U.S.C. §§ 553(c) and 706(2)(d).

28. The regulation is void, invalid, and unenforceable because it has been promulgated in violation of the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601 et seq., and Executive

Order 12866. See Exec. Order No. 12,886, 58 Fed. Reg. 51,735 (1993).

29. The regulation is void, invalid, and unenforceable because it violates the United States Constitution by irrationally discriminating against charitable, not-for-profit organizations that provide DPA in the form of gifts, which are partly supported by donations and service fees from home builders or home sellers, while permitting down payment gifts from governmental agencies and instrumentalities, family members, disaster relief grants, and charitable organizations that are not so supported.

30. The regulation further violates the Constitution by irrationally discriminating among groups of low- and moderate-income homebuyers. Those with access to funds from churches, government agencies, and approved charities will have the means to buy their own homes after the regulation goes into effect. By contrast, those who depend upon DPA from organizations such as AmeriDream - a disproportionate number of whom are minorities, legal immigrants, female-headed households and single parents - will be unable to do so. There is no rational basis upon which HUD may legitimately impose disparate burdens on these two groups.

31. Finally, the regulation's effective dates impermissibility discriminate among similarly-situated DPA

providers in violation of the United States Constitution. The regulation is effective as against DPA providers thirty (30) days from date of the regulation's publication in the Federal Register with the exception of Nehemiah Progressive Development Corporation ("Nehemiah"), which is a faith-based DPA provider. The regulation is not effective as against Nehemiah until six months after the regulation's publication in the Federal Register. There is no rational basis for such disparate treatment of a faith-based DPA provider and a non-faith-based DPA provider like AmeriDream.

32. AmeriDream has no adequate remedy at law.

33. AmeriDream will suffer irreparable harm if the Secretary is not enjoined from enforcing the regulation, scheduled to take effect on October 31, 2007, until this Court has had an opportunity to determine whether the regulation is valid as promulgated.

WHEREFORE, plaintiff AmeriDream prays that the Court issue a declaratory judgment that the regulation is contrary to law, arbitrary and capricious, unenforceable, and otherwise unlawful, and that the Court grant temporary, preliminary, and permanent injunctive relief, enjoining the defendant Secretary of the United States Department of Housing and Urban Development from enforcing the Rule, with costs and attorneys fees against the defendant.

BAKER & HOSTETLER LLP

By: _____
Lee T. Ellis, Jr. (3863)
Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel:  202-861-1521
Fax:  202-861-1783
lellis@bakerlaw.com

Attorneys for Plaintiff

-14-

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS

AmeriDream, Incorporated
200 Professional Drive, Suite 400
Gaithersburg, Maryland 20879

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Montgomery__
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS

ALPHONSO JACKSON, IN HIS CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Baker & Hostetler, LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036
202-861-1500

Case: 1:07-cv-01752
Assigned To : Friedman, Paul L.
Assign. Date : 10/1/2007
Description: Admn. Agency Review

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction* 890

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   OR   ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Plaintiff challenges regulations promulgated by the Dept. of Housing and Urban Development under the Declaratory Judgment Act, 28 U.S.C §§ 2201.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ *None*   Check YES only if demanded in complaint   JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE October 1, 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.