IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERIDREAM, INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:07-CV-1752 (PLF) |
| ) | |
| HON. ALPHONSO JACKSON ) | |
| SECRETARY OF THE UNITED ) | |
| STATES DEPARTMENT OF ) | |
| HOUSING AND URBAN ) | |
| DEVELOPMENT, ) | |
| ) | |
| Defendant. ) | |

**RESPONSE TO MOTION TO INTERVENE OF PARTNERS IN CHARITY, INC., FUTURES HOME ASSISTANCE PROGRAM, AND SOVEREIGN GRANT ALLIANCE**

Defendant does not oppose the Motion to Intervene [Docket No. 15] filed by Partners in Charity, Inc. and Futures Home Assistance Program. However, Defendant opposes the intervention of Sovereign Grant Alliance, as it is already the plaintiff in a pending action in the District of Idaho. See <u>Sovereign Grant Alliance, Inc. v. Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development</u>, Case No. 07-CV-437-MKH (D. Idaho) (Complaint attached as Exhibit 1). In that case, Sovereign Grant Alliance raises essentially the same claims and causes of action as those raised before this Court, and for that reason Sovereign Grant Alliance cannot maintain both actions.

Dated: October 24, 2007.              Respectfully submitted,

                                      PETER D. KEISLER
                                      Assistant Attorney General

                                      JEFFREY A. TAYLOR
                                      United States Attorney

        _/s/ Scott Risner_
MICHAEL SITCOV
TAMARA ULRICH
CHRISTOPHER HALL
ROBERT J. KATERBERG
SCOTT RISNER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 514-2395
Fax: (202) 616-8470
Email: scott.risner@usdoj.gov

Counsel for Defendant

# Exhibit 1

Michael Whipple
SOVEREIGN GRANT ALLIANCE
2810 Bayhill Court
Nampa, ID 83686
Telephone: (208) 468-0884
Facsimile: (208) 468-0887

U.S. COURTS
07 OCT 16 PM 3:45
REC'D_____FILED_____
CAMERON S. BURKE
CLERK              IDAHO

IN THE DISTRICT COURT OF THE ___ JUDICIAL DISTRICT

OF THE STATE OF IDAHO

| | |
|---|---|
| SOVEREIGN GRANT ALLIANCE., an Idaho corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Hon. Alphonso Jackson, Secretary of the US Department of Housing and Urban Development,<br>451 7th Street, S.W.<br>Washington, D.C. 20410<br><br>    Defendant. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Fee |

## Summary Of Complaint

1.     This action challenges a final rule adopted by the United States Department of Housing and Urban Development that eliminates down payment assistance (DPA) programs. The rule is attached hereto as **Exhibit A**. For approximately 10 years, DPA programs have helped over one million individuals and families to buy their own homes, some 80 percent for the first time. HUD adopted this rule after 10 years of actively facilitating DPA programs, and more

than six years after abandoning a rulemaking proceeding in which HUD had proposed a virtually identical rule. Then, as now, opposition to the proposed rule was overwhelming. HUD also adopted this rule in the face of strong opposition from members of Congress and the imminent prospect of legislation that, if signed into law, will render the rule moot.

2.  The rule adopted by HUD is arbitrary and capricious. It is contrary to the clear intent of Congress, HUD's own historic practices and interpretations, and governing judicial precedents. It is also not reasonably supported by HUD's explanations and justifications, and fails to offer a rational basis for rejecting alternative approaches.

3.  Enforcement of this rule will cause immediate and irreparable harm to plaintiff Sovereign Grant Alliance ("SGA"), and is contrary to the public interest. The rule will disrupt financing arrangements in connection with numerous home sales, and deprive many aspiring low- and moderate-income homebuyers who rely on DPA of the ability to purchase their own homes.

## Background

4.  The DPA process, still adhered to today, was developed with the full knowledge of HUD's Office of General Counsel. Significantly, in 1998, HUD's Office of General Counsel reviewed the DPA process and found that it was in compliance with HUD's guidelines. The use of DPA is reported on the HUD-1, a standard form that itemizes all funds associated with the home purchase. In addition, HUD has issued several mortgagee letters clarifying the appropriate use of DPA which did not question the way DPA providers are funded. For instance, Mortgagee Letter 2004-02 addresses proper documentation when downpayment funds are provided from charities and Mortgagee Letter 2002-02 addresses credit policy issues regarding payment of borrower's obligations. In fact, HUD has not only made favorable statements about DPA programs in the past; HUD itself has reportedly utilized DPA programs when selling some of its own inventory of properties.

5. SGA serves low- and moderate-income individuals and families. Many of these individuals and families can meet all the requirements of an FHA-insured loan, such as employment history, income, and credit, yet cannot afford to set aside the minimum down payment of 3 percent of the contract sales price of the home. SGA's DPA program is designed to work with FHA and its population of homebuyers to help them safely overcome the down payment barrier to homeownership while also giving homebuyers positive equity in their home from day one.

6. SGA's programs and services since inception have been done with the explicit intention of enabling individuals and families to develop wealth through homeownership. With this focus, SGA has relieved poverty and improved community beautification and maintenance. Their successful efforts help families break the cycle of poverty or develop financial independence, increase homeownership opportunities for underserved and traditionally disenfranchised populations, replace blight by developing new communities, and sustain strong communities by preventing foreclosures.

## Jurisdiction And Venue

7. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331. This action arises under the National Housing Act of 1934, as amended, 12 U.S.C. §§ 1701 et seq. ("NHA"), the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Fifth Amendment to the United States Constitution.

8. SGA is incorporated under the laws of Idaho, with its principal place of business in Nampa, Idaho.

9. Defendant Alphonso Jackson is the Secretary ("Secretary") of HUD. He is responsible for the operation of HUD; and the promulgation of rules and regulations by that

agency, in particular the rule at issue herein. He is sued in his official capacity only.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (e).

11. On May 11, 2007, the Secretary published "Standards for Mortgagor's Investment in Mortgaged Property" in the Federal Register, a proposed rule that would change the standards governing a homebuyer's investment in property when the mortgage on the property is insured by the Federal Housing Administration ("FHA"). 72 Fed. Reg. 27,048-27,051 (May 11, 2007) (to be codified at 24 C.F.R. pt. 203).

12. On October 1, 2007, the Secretary promulgated a final version of the rule in the Federal Register. *See* Standards for Mortgagor's Investment in Mortgaged Property, 72 Fed. Reg. 50002-07 (Oct. 1, 2007)(to be codified at 24 C.F.R. pt. 203) ("the rule").

13. The NHA requires homebuyers to make a down payment of 3 percent of the purchase price of their home to qualify for FHA mortgage guarantees. See 12 U.S.C. § 1709(b)(9). Many prospective low- and moderate-income homebuyers are unable to meet this requirement without the assistance of organizations such as SGA.

14. The rule adversely and irreparably harms SGA and the low- and moderate-income homebuyers who depend on its assistance in numerous ways, including but not limited to the following:

(a) It discriminates against SGA as apposed to similarly situated DPA providers by forcing SGA to shut down 5 months earlier.

(b) The rule prohibits low- and moderate-income homebuyers from making their statutorily-required 3 percent down payment with funds provided by a organizations when home builders and home sellers are a source of funding and support.

(c) HUD's rule will eviscerate SGA's funding pool, crippling plaintiff's ability to provide down payment assistance to new homebuyers. In many cases, these individuals have no other source of funds with which to make the down payment required by the NHA. 12 U.S.C. §

1709(b)(9).

        (c)     The rule will have a significant impact on homeownership for low-income, first time, and minority homebuyers.

        (d)     The rule will have significant impact on FHA and the mortgage lending industry. This rule could reduce FHA's volume by 30 to 50 percent. Considering that its market share is lower than at any time in recent history-less then 2 percent-the impact to FHA could be quite serious. Repercussions of eliminating seller funded DPA would be felt by all of those focused on low- to moderate-income housing, including lenders, builders and other real estate professionals.

### Legal Bases For Challenging HUD's Rule

15.     The rule's effective dates impermissibility discriminate among similarly-situated DPA providers in violation of the Equal Protection element of the Due Process Clause of the Fifth Amendment. The rule is effective as against DPA providers thirty (30) day from date of the rule's publication in the Federal Register with the exception of Nehemiah Progressive Development Corporation ("Nehemiah"), which is a faith-based DPA provider. The rule is not effective as against Nehemiah until six months after the rule's publication in the Federal Register. There is no rational basis for such disparate treatment of a faith-based DPA provider and a non-faith-based DPA provider like SGA. In fact, HUD promised to treat all providers the same, in a letter dated April 3, 1998, and attached hereto as **Exhibit B.**

16.     The rule is void, invalid, and unenforceable because it violates the United States Constitution by irrationally discriminating against organizations that provide DPA in the form of gifts, which are partly supported by donations and service fees from home builders or home sellers, while permitting down payment gifts from governmental agencies and instrumentalities,

family members, disaster relief grants, and organizations that are not so supported.

17. The rule violates the Constitution by irrationality discriminating among groups of low- and moderate-income homebuyers. Those with access to funds from churches, government agencies, and approved charities will have the means to buy their own homes after the rule goes into effect. By contrast, those who depend upon DPA from organizations such as SGA - a disproportionate number of whom are minorities, legal immigrants, female-headed households and single parents - will be unable to do so. There is no rational basis upon which HUD may legitimately impose disparate burdens on these two groups.

18. The rule contravenes the NHA's purpose of promoting housing affordability and choice; of facilitating access to, and competition and efficiency in the provision of, housing finance; of protecting the availability of adequate funding for housing at low cost; and of contributing to the general well-being of the housing sector in the national economy. The rule is also contrary to HUD's own historic practices and interpretations, and governing judicial precedents.

19. The rule exceeds the scope of the Secretary's authority to interpret and promulgate regulations under section 1709(b)(9) of the NHA. Because the rule exceeds HUD's statutory jurisdiction, authority, and right, it is invalid pursuant to 5 U.S.C. § 706(2)(c).
The rule is also not reasonably supported by HUD's explanations and justifications, and HUD has failed to offer any rational reasons for its rejection of alternative approaches to the rule. The rule is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. As such, the rule is invalid pursuant to 5 U.S.C. § 706(2)(a).

20. Contrary to previous practices by HUD on this specific issue, HUD has failed to recognize the almost 15,000 comments against the rule versus less than 100 in support. In past attempts to issue such a rule, a margin of 1,800 comment against to 30 in support was sufficient for HUD to withdraw the rule. Furthermore, the Defendant stated publicly during the rule making

process that he was going to implement the Rule regardless of the public comments.

21. HUD has also failed to give adequate notice of the rule it adopted and failed to articulate a rational basis for its decision to adopt this rule, which is inconsistent with past positions taken and interpretations made by HUD. For these and other reasons, HUD's rule is invalid pursuant to 5 U.S.C. 5§ 553(c) and 706(2)(d).

22. The rule is void, invalid, and unenforceable because it has been promulgated in violation of the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601 et seq., and Executive Order 12866. See Exec. Order No. 12,886, 58 Fed. Reg. 51,735 (1993).

23. SGA has no adequate remedy at law.

24. HUD will not be harmed in any way by a temporary restraining order and /or a preliminary injunction prohibiting the implementation of the rule because they are permitting Nehemiah to continue to operate, thus fully allowing down payment assistance to persist for the next 6 months, and accepting all of the so-called negative impacts of down payment assistance, but limiting the industry to only one provider.

25. SGA will suffer irreparable harm if the Secretary is not enjoined from enforcing the rule, scheduled to take effect on October 31, 2007, until this Court has had an opportunity to determine whether the rule is valid as promulgated.

WHEREFORE, SGA asks that the Court grant temporary, preliminary, or permanent injunctive relief, enjoining the defendant Secretary of the United States Department of Housing and Urban Development from enforcing the rule and that the Court issue a declaratory judgment that the rule is contrary to law, arbitrary and capricious, unenforceable, and otherwise unlawful, with costs and attorneys fees against the defendant.

DATED THIS 16th day of October, 2007.

                        SOVEREIGN GRANT ALLIANCE

                        By _____
                            Michael Whipple